IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

REENA AKKAL                          )
and JASSI AKKAL,                     )
                                     )
          Plaintiffs,                )     TC-MD 130216D
                                     )
     v.                              )
                                     )
WASHINGTON COUNTY ASSESSOR,          )
                                     )
          Defendant.                 )     **FINAL DECISION**

The court entered its Decision in the above-entitled matter on November 14, 2013. The

court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14

days after its Decision was entered. The court's Final Decision incorporates its Decision without

change.

Plaintiffs appeal the 2012-13 real market value of property identified as Accounts

R702920 and R2179951 (subject property). A trial was held in the Oregon Tax Courtroom,

Salem, Oregon, on August 6, 2013. Plaintiffs appeared and testified on their own behalf.[1] Chris

Werner appeared on behalf of Defendant. Andrews Hawks (Hawks), registered appraiser,

testified on behalf of Defendant.

Plaintiffs' Exhibits A, B, C, and D and Defendant's Exhibit A were admitted without

objection.

## I. STATEMENT OF FACTS

The subject property was described by Hawks:

> "The subject property consists of a fueling station [with four dispensers],
> related equipment, a newly constructed convenience store, yard improvements,

---

[1] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to two individuals with the same last name, Akkal. To avoid confusion, the court will use the first name of the individual being referenced.

and land. The improvements are of average quality and occupy 0.53 acres (23,087 square feet) of land on a corner lot in downtown Hillsboro's Station Community Commercial zoning district. The site is paved with a combination of blacktop and concrete for parking and operation of the facility."

(Def's Ex A at 2.) The parties agree that the subject property's highest and best use is a fueling station and convenience store. (Def's Ex A at 11.)

Plaintiffs testified that they purchased the subject property in 2010, paying $500,000, for "land, tanks and a three bay garage." Jassi testified that Plaintiffs remodeled the three bay garage, by disposing of the hydraulic lifts and converting the space into a convenience store. He testified that the cost of the convenience store improvements was $130,000. Hawks testified that Plaintiffs did not submit evidence to document total cost of convenience store improvements. Hawks concluded that because the "improvements on the site at the time of sale were at the end of their useful lives, were subsequently demolished and rebuilt for use as a convenience store, the improvements [at the time of sale] did not contribute to value or the sales price. For this reason, we did not consider this sale an appropriate reflection of the subject market value of a fueling station with convenience store as of 1/1/2012." (*Id*. at 22.)

Jassi testified that according to the prior owner the cost of the purchased equipment was $108,333.22 when it was installed in 1994. (Ptfs' Ex B.) Jassi questioned Defendant's determination that the subject property's equipment 2012-13 real market value is $197,000, a value in excess of its original cost and as of the date of assessment 18 years old. Hawks testified that he determined the cost of equipment, using the "depreciated replacement cost method" and "county cost method." (Def's Ex A at 20-21.) He determined that "current market costs of the machinery and equipment installed at the subject property were determined via a reputable supplier [Darrel Mayer, Territory Manager, AceTank & Fueling]." (*Id*. at 20.)

/ / /

Plaintiffs testified that in determining the subject property's real market value they "ran comps of 2 new gas stations opened at the same time; their address and property taxes are listed below and another business across our street. These are most fair comps that are available comps that we have as is same business and almost same lot size. * * * As you can see from these business (comps) their property taxes are almost half of what we are paying. We are disputing per sqft assessed by county, which is equal to $274.16, this amount is way higher then (*sic*) all the properties sold in our neighborhood." (Ptfs' Ltr at 1, July 22, 2013.) Plaintiffs' requested real market value and assessed value is:

> "Land Value: $352,000.00
> "Structural Value: $234000.00
> "Equipment/Machinery: $89,000.00
> "Total Rmv: $675,000.00"

(*Id.* at 2.)

Jassi testified that because he is a licensed realtor he was able to access transaction history for the three comparable properties identified by Plaintiffs. In response to questions, Jassi testified that he did not verify that each sale transaction was arm's length nor did he verify the information reported in the transaction history with the property owners. According to the transaction history, Plaintiffs' Comparable 1 (Oak Street) recorded a sale on January 28, 2009, in the amount of $590,000. (Ptfs' Ex A at 6 of 17.) The property's lot size is reported to be 16,117 square feet and its use is convenience store with fuel pump. (*Id*. at 3 of 17.) Hawks testified that Plaintiffs' Comparable 1 was part of a "73 gas station bulk sale" and the "sale price was an allocation." Plaintiffs' Comparable 2 (Baseline Street) recorded a sale on June 28, 2012, in the amount of $600,000. (*Id*. at 6 of 19.) The property's lot size is reported to be 9,148 square feet and its use is retail stores (personal services, photography, travel). (*Id*. at 3 of 19.) Hawks testified that Plaintiffs' Comparable 2 is a "free standing retail operation dating to the 1960s" and

he would not "rely on that property as a comparable for a fueling station." Plaintiffs' Comparable 3 (Cornell Road) recorded an "intrafamily transfer or dissolution" with no reported price on May 3, 2004. (*Id*. no label.) The reported lot size is 15,682 square feet and its use is convenience store with fuel pump. (*Id*., no label.) Hawks testified that county has no record of "a title transfer since 1980s."

Hawks reviewed his appraisal report, stating that he considered three approaches, cost, sales comparison and income, in concluding that the subject property's real market value as of January 1, 2012, was $900,000. (Def's Ex A at 35.) Hawks testified that, based on three verified comparable land sales with price per square foot ranging from $24.89 to $20.13,[2] he concluded that the "tax roll of $372,680 for the 23,087 square foot subject lot" was supported. (Def's Ex A at 17.)

Hawks testified that he determined building and yard improvements real market value, using Marshall and Swift Valuation Service. (*Id*. at 19.) To that value, Hawks added land and machinery and equipment for an "indicated market value of the subject property by cost approach [of] $925,500." (*Id*. at 21.)

For the sales comparison approach, Hawks testified that he "found three sales that are comparable to the subject property, and which sold as near to the assessment date of 1/01/2012 as the market allowed." (*Id*. at 22.) Hawks testified that he made qualitative adjustments, including location, quality, age/condition, convenience store, carwash, and number of gas dispensers, to the sale price and computed a price per dispenser. (*Id*. at 26.) Hawks testified that the "most similar comparable is Sale 3 because of [its] proximity to the subject as well as the overall size and quality of the improvements. This sale was given the most consideration and,

---

[2] Hawks stated two difference prices per square foot for Comparable Sale 3: $21.12 and $20.13. (Def's Ex A at 13, 17.)

therefore, the indicated price per dispenser is $206,000 and the indicated value of the subject [property] is $824,000." (*Id.* at 27.) Plaintiffs challenged the location of Defendant's comparables, stating that "Tualatin which is located 10 miles" from the subject property and "Beaverton" are "demographically" different from Hillsboro. Plaintiffs suggested that Hawks should have used the "Oak Street sale" because it is located "in the same vicinity as the subject property, on a one way street, same size lot" and the "[property] taxes" on that property are "1/3" of the amount of property taxes that Plaintiffs are paying.

Hawks testified that his report included the income approach based on "market rents" and "expenses including vacancy and reserves for replacement" to determine a net operating income that was "capped" at a "market derived capitalization rate," resulting in an indicated improvement value of $413,974. (*Id.* at 32.) Hawks testified that he added land real market value and machinery and equipment real market value to the indicated improvement value for a total real market value of $1,010,525. (*Id.*) Hawks testified that "[w]ithout the data to appraise the entire fueling station and convenience store based on income, this report relied on market data from convenience stores around the County and additional information from real estate research publications to support the value attributed only to the convenience store portion of the account under appeal. * * * This approach provided the least reliable indication of RMV." (*Id.* at 33.) Reena questioned Hawks' market rents, stating that rents in the subject property's area are $10 to $16 per square foot, not $22.

Hawks testified that after considering each of the three valuation approaches, he gave "the Cost Approach" * * * the most weight (75%) since it is the most reliable indicator of value * * * because [the] building was effectively new at the assessment date and the machinery and equipment can be priced in the open market and depreciated based on [predictable] useful

lifespan. The Sales Comparison Approach was given 25% weight and demonstrates vacant land values while also showing that most comparable sales of operating fuel stations are transacted at an adjusted price of over $1,000,000 and at an indicated price of $206,000 per dispenser."

(*Id*. at 34.) Hawks concluded that "the indicated market value of the subject property as of January 1, 2012 is:

"Land [Account R702920]:          $372,680
"Improvements [Account R702920]: $329,860
"M&E [Account R2179951]:          $197,460

"**Total Real Market Value**:      **$900,000**"

(*Id*. at 35.) (emphasis in original.) Defendant requested that the court "sustain the tax roll value" and the Washington County Board of Property Tax Appeals Orders determining a real market value for both accounts of $829,220.

In closing, Plaintiffs made the following statement:

"We are small business owners and work hard to survive in this tough economy, we hire local unemployed individuals so that they can stand on there (*sic*) feet. In Oregon, we are asking Washington County to support small businesses so they can support the economy. We are not able to afford so much property tax where as other business owners are playing much smaller amount."

(Ptfs'Ltr at 2, July 22, 2013.)

## II. ANALYSIS

The issue before the court is the subject property's real market value as of January 1, 2012. In Oregon, all real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232.[3] ORS 308.205(1) defines real market value as follows: "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an

---

[3]The court's references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2011.

informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

Real market value is determined by the particular methods and procedures adopted by the Department of Revenue. ORS 308.205(2). There are three approaches to valuation (income, cost, and sales comparison) that must be considered when determining the real market value of a property. OAR 150-308.205-(A)(2)(a); *see also Allen v. Dept. of Rev.* (*Allen*), 17 OTR 248, 252 (2003); *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995). The valuation approach to be used is a question of fact to be determined on the record. *Pacific Power & Light Co. v. Dept. of Revenue*, 286 Or 529, 533, 596 P2d 912 (1979). Hawks considered all three approaches to valuation, concluding that the subject property's real market value is best determined by the cost and sale comparison approaches. Plaintiffs' only documented evidence was three properties that they identified as comparable to the subject property.

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530 at 4 (July 12, 2001) (citing *Feves v. Dept. of Revenue*, 4 OTR 302 (1971)). This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV [Real Market Value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers.

/ / /

A.      *Comparable sales approach*

The comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management Corp and McKenzie River Motors v. Lane County Assessor*, TC-MD No 060354D at 6 (Apr 3, 2007) (citing Appraisal Institute, *The Appraisal of Real Estate* 335 (12th ed 2001)).  ORS 308.205(2) provides, in pertinent part, that "[r]eal market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]"  The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), stating that:

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

Plaintiffs relied on three properties that they identified were comparable to the subject property to support their requested real market value.  Plaintiffs provided limited information about each of the properties they identified as comparable to the subject property.  Plaintiffs did not submit pictures of the properties and detailed descriptions of improvements including size, age, condition, quality, and number of gas dispensers (if any).  Plaintiffs made no adjustments to the sale prices for two of the three properties that they reported were sale transactions.  Plaintiffs failed to verify that the two reported sales were arm's length transactions.  One of the two reported sale prices was an allocated bulk sale; there was no evidence that the sale price accurately reflected the value of the property if purchased without other properties.  Each of the properties was located on parcels that were significantly smaller in size than the subject property; Plaintiffs made no adjustment for size.  One of the three properties was a retail facility built in the late 1960s without a gas station.  Plaintiffs failed to explain how that property is similar to

/ / /

the subject property, a gas station and convenience store, and if similar, Plaintiffs made no adjustments.

Plaintiffs did not submit an appraisal report. Plaintiffs submitted no evidence that they considered all three valuation approaches. Plaintiffs did not comply with statutory requirements and administrative rules for the comparable sales approach. Plaintiffs presented no evidence for the other two valuation approaches, cost and income.

Plaintiffs failed to carry their burden of proof.

Even though the burden has not shifted under ORS 305.427, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. The court now turns to Defendant's evidence to determine the real market value of the subject property. Defendant submitted an appraisal report that considered all three valuation approaches. Hawks' report was complete and met the statutory and administrative rule requirements. Hawks determined a real market value that supports the tax roll value determined by Defendant and the Washington County Board of County Property Tax Appeals. Defendant's request that the court uphold the tax roll real market values is granted.

B.     *Uniformity*

Plaintiffs allege that their tax burden is greater than that of similar neighboring businesses. Oregon's property tax system changed in 1997 when Measure 50 was passed.[4] Prior to the changes, there was a relationship or link between real market value and assessed value. ORS 308.232 (1995). Under that system, when the real market value of a property increased, the assessed value would also increase. With the enactment of Measure 50, the link between

---

[4] Measure 50 was codified at Article XI, section 11, of the Oregon Constitution.

real market value and assessed value was broken because assessed value is now based on the lesser of real market value or the maximum assessed value. Maximum assessed value is a statutory value based on 90 percent of the real market value of the property as of 1995 or the real market value at the time the property is added to the tax roll. The law provides that for each successive year the maximum assessed value in most cases will increase no more than three percent a year. Or Const, Art XI, § 11(1)(b); *see also* ORS 308.146(1) (2007).

The court has previously concluded that the current property tax system will result in some degree of nonuniformity. In *Ellis v. Lorati*, the court stated:

> "The court recognizes that in one sense MAV is somewhat artificial or arbitrary. That is inherent in the overall scheme of section 11 [of the Oregon Constitution]. The concept may, over time, result in various degrees of nonuniformity in the property tax system. Section 11(18) contemplates this and excuses itself from complying with other constitutional provisions requiring uniformity, specifically Article IX, section 1, and Article I, section 32."

14 OTR 525, 535 (1999).

For the 2012-13 tax year, Plaintiffs' assessed value is its maximum assessed value, not real market value.[5] Plaintiffs' neighbors may have lower assessed values because the maximum assessed value of those properties was established as early as 1997. In contrast, Plaintiffs made a new improvement to the subject property in 2011 that was recently added to the tax roll, which may have resulted in a higher maximum assessed value for the subject property than properties of their neighbors who made no recent improvements to their properties. The court has no authority to reduce a property's real market value solely on the basis of comparing assessed values of one property to another.

/ / /

---

[5] Plaintiffs' assessed value for the 2012-13 tax year is $680,120, slightly more than Plaintiffs' requested real market value ($675,000).

### III. CONCLUSION

After careful review of the testimony and evidence, the court concludes that Plaintiffs failed to carry their burden of proof. Defendant's appraisal report met the statutory and administrative rule requirements and supported the 2012-13 real market values for Accounts R702920 and R2179951. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of December 2013.


_____
JILL A. TANNER
PRESIDING MAGISTRATE


*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This Final Decision was signed by Presiding Magistrate Jill A. Tanner on December 3, 2013. The Court filed and entered this Final Decision on December 3, 2013.*